'UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) |  |
| v. | ) ) | Criminal No. 01-0425 (PLF) |
| TYRONE WEAKS, | ) ) ) |  |
| Defendant. | ) ) |  |

OPINION AND ORDER

This case is before the Court on Defendant Tyrone Weaks' *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government opposes the motion. Upon consideration of the parties' written submissions, the relevant case law, and the entire record herein, the Court will deny the motion.[1]

---

[1] Relevant papers reviewed by the Court include: Defendant's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 120) ("§ 2255 Mot."); Government's Opposition to Defendant's § 2255 Motion (Dkt. No. 125) ("Opp."); Defendant's Reply to Government's Opposition to his § 2255 Motion (Dkt. No. 126) ("Reply"); Nov. 29, 2001 Indictment ("Indictment"); Defendant's Motion to Suppress Statements, dated Jan. 9, 2002 (Dkt. No. 13) ("Mot. to Suppress 1/9/02"); Defendant's Supplemental Motion to Suppress Statements, dated Mar. 13, 2002 (Dkt. No. 21) ("Mot. to Suppress 3/13/02"); Defendant's Motion to Exclude Fruits of Unlawful Search and Seizure, dated Mar. 13, 2002 (Dkt. No. 22) ("Mot. to Exclude 3/13/02"); Defendant's Motion to Quash Indictment, dated Mar. 13, 2002 (Dkt. No. 23) ("Mot. to Quash 3/13/02"); Defendant's Motion to Dismiss Count Two of Indictment, dated Mar. 13, 2002 (Dkt. No. 24) ("Mot. to Dismiss 3/13/02"); Transcript of April 10, 2002, Motions Hearing before Judge William B. Bryant (Dkt. No. 41) ("4/10/02 Tr."); and Transcript of April 11, 2002, Plea Hearing before Judge William B. Bryant (Dkt. No. 46) ("4/11/02 Tr.").

I. BACKGROUND

On October 31, 2001, agents from the Federal Bureau of Investigations and the Metropolitan Police Department entered an apartment rented to Ms. Stephanie Conyers. Finding both Ms. Conyers and her companion, Mr. Tyrone Weaks, in possession of cocaine base ("crack cocaine"), the agents arrested them for drug and firearms offenses. In late 2001, a grand jury returned an indictment charging Mr. Weaks with (1) unlawfully possessing with the intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); and (2) one count of possession of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). A third count charged Ms. Conyers with unlawful possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). See Indictment at 1-2.

The defendant was initially represented by the Office of the Federal Public Defender, which filed motions to suppress statements and physical evidence on his behalf. See Mot. to Suppress, 1/9/02. In January 2002, the defendant retained new counsel, William Dansie, Esquire, to represent him. In March 2002, Mr. Dansie filed a supplemental motion to exclude statements that the defendant had made during plea negotiations, see Mot. to Suppress 3/13/02; a motion to exclude evidence seized during the execution of a search warrant, see Mot. to Exclude 3/13/02; and a motion to dismiss the firearm count. See Mot. to Dismiss 3/13/02. On that same day, the defendant independently filed a *pro se* motion to quash the indictment, arguing that the indictment was invalid because, due to the secrecy of the grand jury proceedings, there was no way to determine that the indictment was in fact signed by the grand jury foreperson. See Mot. to

Quash at 1-2. Defendant's counsel served the motion to quash for the defendant, but did not sign it or file it on the defendant's behalf. See id.

On April 10, 2002, Judge William B. Bryant, who had agreed to handle pretrial motions and the trial of the case, held an evidentiary hearing to address all of the defendant's motions. See 4/10/02 Tr. Mr. Weaks testified at this hearing. His counsel, William Dansie, asked Mr. Weaks to "tell the judge [his] concerns about [the] search warrant," 4/10/02 Tr. at 18, an issue that had not been raised either in the suppression motions or in the defendant's *pro se* motion to quash. Mr. Weaks testified that he believed agents had entered his home pursuant to a defective search warrant. Id. at 19. He stated that the agents refused to show him or Ms. Conyers a warrant to search her apartment. Id. The defendant further testified that when he later saw the warrant, he realized that it improperly described his building as having black instead of white doorway numerals, that the "same person signed every last name on this warrant," and that the judge's signatures on the affidavit and search warrant "look[ed] different." Id.[2]

---

[2] Counsel's questions on these points required the defendant to testify in narrative form:

> Q: Can you tell the Judge your concerns about this search warrant, please?
>
> A: Well, for one, it has crossed out addresses on it. It says – the apartment building is described as a "multi-story, white brick building with the numerals 1649," which is crossed out and then it is wrote up here "in black above the doorway entrance." But the numerals above my doorway entrance are in white. The search warrant – the same person signed every last name of the officers on the search warrant. So one person signed every last name on this warrant. And it doesn't have any name on it. And they placed me under arrest, and Stephanie Conyers is the owner of this house, and they did not present it to her. So they have had it. And we asked them for it, and they never presented it. And I have an affidavit

3

Following the defendant's statements regarding the warrant, Judge Bryant asked the defendant's counsel, Mr. Dansie, whether he had any concerns regarding the warrant's authenticity. Counsel answered in the negative:

> Q: Do you have any concerns about them?
>
> A: You are asking me personally, Your Honor?
>
> Q: Yes. I want to know do you yourself have any reason to point out some deficiencies in them yourself?
>
> A: Your Honor, I do not. I have investigated this case very thoroughly and spent a lot of time with the defendant, and these motions are filed *pro se*. These concerns about forged signatures –
>
> Q: All right, go ahead.

4/10/02 Tr. at 20.

Mr. Weaks made several incriminating statements during the course of his testimony at the evidentiary hearing. Under cross-examination by the government, he admitted that he threw both crack cocaine and a gun out the window. 4/10/02 Tr. at 25-26 ("I threw my crack out the window before I threw my gun."). While being cross-examined by Ms. Conyers'

---

> and this search warrant with the same judge's name, but the signatures look different.
>
> Q: Tell the Judge, if you will, please, whether there are any other concerns you have about these papers, or is that everything?
>
> A: Well, I have concerns about the affidavit – I mean it's false. It is made up because I didn't do any of that that it is stating, and it doesn't support any type of probable cause to even get a search warrant.

4/10/02 Tr. at 18-19.

4

counsel, Mr. Weaks repeated his admission that he threw crack cocaine and his own gun out the window, and further admitted that drugs recovered from Ms. Conyers' shirt pocket belonged to him. Id. at 35-36. Mr. Dansie did not object to this line of questioning. Mr. Weaks also admitted under questioning from the Court that he returned fire when several unidentified individuals shot at his home. Id. at 40.

During his testimony at the hearing, Mr. Weaks also alleged that the arresting officers physically assaulted him and Ms. Conyers. 4/10/02 Tr. at 25-26. Mr. Dansie called Agent Kyle Fulmer to the stand in an apparent effort to bolster the defendant's testimony. Id. at 40. During his testimony, Agent Fulmer testified that (1) neither he nor the other law enforcement officers assigned to the case ever struck Mr. Weaks or Ms. Conyers, id. at 54-55; (2) that the officers entered the apartment pursuant to what Agent Fulmer believed to be a valid search warrant, id. at 46-47; and (3) that during his post-arrest interview, Mr. Weaks admitted that the crack cocaine and gun he threw out the window belonged to him. Id. at 72-73.

At the conclusion of the evidentiary hearing, Judge Bryant denied the defendant's motion to suppress. On the following day, pursuant to a plea agreement, Mr. Weaks pled guilty to both counts of the indictment pertaining to his conduct. See 4/11/02 Tr. at 16. Under the terms of the plea agreement, Mr. Weaks admitted responsibility for more than 5 grams of crack cocaine and admitted that he possessed a firearm in connection with his drug activities. See Plea Agreement ¶¶ 1, 5. In return, the government agreed to recommend a two-level decrease in the defendant's base offense level and to dismiss the third count of the indictment, thus releasing the defendant's girlfriend, Ms. Conyers, from responsibility. See id. at ¶¶ 9-10. Judge Bryant

5

scheduled the defendant for sentencing before the undersigned in August 2002. 4/11/02 Tr. at 17-18.

The sentencing proceeding was delayed for several months. Mr. Dansie withdrew from the case and a third attorney, who had been appointed as Mr. Dansie's replacement, also withdrew. In addition, in August of 2002, Mr. Weaks moved to withdraw his guilty plea. Judge Bryant denied the defendant's motion to withdraw his guilty plea following a hearing in early 2003. On March 13, 2003, the undersigned sentenced Mr. Weaks to 121 months' imprisonment on the drug count and 60 months' imprisonment on the weapons count, with the sentences to run consecutively. See Judgment and Commitment, 3/17/03 (Dkt. No. 69).

Following sentencing, the defendant appealed Judge Bryant's denial of his motions to withdraw his guilty plea and to suppress evidence on the basis of faulty warrants. See United States v. Weaks, 388 F.3d 913 (D.C. Cir. 2004). Regarding the suppression issue, the defendant argued on appeal that law enforcement officers failed to leave a copy of the warrant at Ms. Conyers' residence as required by Rule 41(f)(3)(B) – now Rule 41(f)(1)(C) – of the Federal Rules of Criminal Procedure. Id. at 915. The court of appeals affirmed Judge Bryant's denial of the motion to suppress, finding that (1) the only evidence available suggested that the agents had in fact left a copy of the warrant as required; (2) the defendant failed adequately to brief the Rule 41 issue on appeal; and (3) because the defendant failed to argue in this Court that a violation of Rule 41(f) could justify a suppression order, he had waived his objection and thus his ability to argue the issue on appeal. Id. The defendant filed a writ of certiorari to the United States Supreme Court, which vacated and remanded for further consideration – not on any of these issues, but in light of United States v. Booker, 543 U.S. 220 (2005). See Weaks v. United

States, 544 U.S. 917 (2005). On remand, this Court sentenced the defendant to a term of 66 months' imprisonment on the drug count and 60 months' imprisonment on the weapons count, with the two sentences to run consecutively. See Amended Judgment and Commitment, 10/12/06 (Dkt. No. 106).

On March 10, 2008, the defendant filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that he was denied the effective assistance of counsel (1) when his lawyer forced him to proceed *pro se* at the April 10, 2002, pretrial hearing regarding the motion to quash, § 2255 Mot. at 16-18; (2) when his counsel failed to adequately litigate his suppression motion by not addressing whether law enforcement officers actually served the warrant on the defendant, id. at 17-19; and (3) when counsel improperly coerced him into pleading guilty. Id. at 20-21. Accordingly, the defendant contends, his plea was not knowing, voluntary, and intelligent. Id.

In response to the defendant's motion, the government maintains that the defendant has failed to establish that his counsel was deficient or that such deficiency prejudiced the defendant. Opp. at 6. The government's opposition is supported by the affidavit of William Dansie, Esquire, who represented Mr. Weaks from January 2002 until he was permitted to withdraw from the case in August 2002. The government asserts that Mr. Weaks' trial counsel adequately explained to him the implications of the *pro se* motion, the risks of testifying, and the consequences of his guilty plea. Id. at 7-10. The government also maintains that Judge Bryant adequately informed the defendant of his rights during the April 11, 2002, plea proceeding and that the defendant knowingly waived these rights. Id. at 10-11. Finally, the government argues that Mr. Weaks has failed to show that he would have proceeded to trial but for his counsel's

7

alleged deficiencies. In support of this assertion, the government notes that there was overwhelming evidence of the defendant's guilt and that Judge Bryant – who would have been the finder of fact at trial, since the defendant had waived a jury trial – had heard the defendant admit during the April 10 motions hearing that he had committed the offenses in question. Id. at 11-12.

## II. DISCUSSION

### A. The Strickland Test

To prevail on a claim of ineffective assistance of counsel, the defendant bears the burden of showing both that (1) counsel's performance was "deficient," that is, that it "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); see also United States v. Laureys, 653 F.3d 27, 33-34 (D.C. Cir. 2011); United States v. Moore, 651 F.3d 30, 85 (D.C. Cir. 2011). The second, or "prejudice" prong of the Strickland test is based on the Supreme Court's judgment that "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding, if the error had no effect on the judgment.'" Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland v. Washington, 466 U.S. at 691). The Court assesses deficient performance under an objective standard of reasonableness based on prevailing professional norms. Strickland v. Washington, 466 U.S. at 688. Furthermore, recognizing the wide range of sound trial strategy that a constitutionally effective attorney might choose, the Supreme Court presumes that counsel "rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment"; the burden, therefore, is on the defendant to overcome the presumption that trial counsel's performance "falls within [that] wide range of reasonable professional assistance" and to show that counsel's alleged errors were not the result of sound trial strategy. Strickland v. Washington, 466 U.S. at 689-90.

In judging counsel's performance under Strickland, the question is not whether "a particular act or omission" was unreasonable, but whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 689-90. In other words, a court must consider the cumulative effect of counsel's errors. See Lindstadt v. Keane, 239 F.3d 191, 202 (2d Cir. 2001) (holding that although some of the errors counsel made would not alone amount to constitutional ineffectiveness, "the cumulative weight of error convinces this Court that the ineffectiveness of counsel reached the constitutional threshold"); Henry v. Scully, 78 F.3d 51, 53 (2d Cir. 1996) (concluding that the court need not determine whether one or two of counsel's errors amounted to ineffective assistance because the "aggregate effect of these three instances of inaction by defense counsel convinces us that the magistrate and district judge were correct in finding" ineffective assistance of counsel).

Finally, "judicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. at 688. As the Supreme Court has explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

>counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

In the case of a defendant who has entered a plea of guilty, the Court assesses the prejudicial impact of alleged deficiencies based on whether, "but for counsel's errors," "there is a reasonable probability" that the defendant "would not have pleaded guilty and would have insisted on going to trial." See Hill v. Lockhart, 474 U.S. at 58-59. See also United States v. Hanson, 339 F.3d 983, 990 (D.C. Cir. 2003) ("Where the defendant attacks a plea bargain, the prejudice inquiry 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'") (quoting Hill v. Lockhart, 474 U.S. at 59). A defendant's "bare allegation" that he would have gone to trial but for counsel's performance is not sufficient to show prejudice; rather, the defendant must demonstrate through some evidence that there was a "reasonable probability" that this would have been the case. United States v. Tolson, 372 F. Supp. 2d 1, 19 (D.D.C. 2005) (noting that a defendant failed to satisfy this burden when she "did not even file a sworn affidavit" to support her claims.).

The Court may decide a claim of ineffective assistance of counsel without an evidentiary hearing if it is "clear from the record" that the defendant is not entitled to relief. United States v. Carr, 373 F.3d 1350, 1354 (D.C. Cir. 2004). See also United States v. Weaver, 234 F.3d 42, 46 (D.C. Cir. 2000) (hearing not required if court determines that "alleged deficiencies of counsel did not prejudice the defendant"); United States v. Gibson, 577 F. Supp. 2d 317, 328 (D.D.C. 2008) (ineffective assistance of counsel claim does not merit a hearing if court is confident that alleged deficiencies could not have prejudiced defendant).

### B. Defendant's Claim of Ineffective Assistance
### Regarding the Pro Se Motion to Quash

Mr. Weaks alleges that his trial counsel forced him to file the motion to quash the indictment *pro se* and failed to adequately explain the consequences of filing the motion – in particular, that counsel failed to explain to him that he would almost certainly need to testify in order to support the motion and that, if he did testify, he would risk incriminating himself. See § 2255 Mot. at 16-18. In response, the government submits an affidavit from the defendant's counsel, William Dansie, in which Mr. Dansie states that he fully discussed the consequences of litigating the motion and advised the defendant against filing it. He further avers that, despite such warnings, the defendant insisted on going forward and insisted on testifying. See Opp., Att. A, at ¶¶ 4-7. Specifically, Mr. Dansie sets forth the advice he gave Mr. Weaks and the consequences he described:

> As Mr. Weaks and I prepared for the pretrial motions hearing in this case, I asked him if he had any witnesses to present. Although I interviewed various people during my pretrial investigation, it became clear to me that Mr. Weaks would have to testify at the motions hearing in order to litigate his *pro se* motion. Not only did Mr. Weaks understand that he would have to testify at the motions hearing, he agreed to do so. Mr. Weaks also agreed to testify while knowing that he would have to admit to possessing the gun and drugs that were ultimately recovered in this case, due to comments he made to the prosecutor while we engaged in pretrial plea negotiations with the government. At one point he wrote to the judge admitting the facts in the indictment.

Id. at ¶5.

On the basis of Mr. Dansie's affidavit, a review of the suppression hearing transcript, and other facts in the record, the Court concludes that the defendant's counsel did not provide the defendant with ineffective assistance of counsel in this regard. The fact that Mr.

11

Dansie submitted three motions on the same day that he served the defendant's *pro se* motion to quash but declined to sign and file it on the defendant's behalf suggests that he did not support the defendant's *pro se* motion.³ Furthermore, the Dansie Affidavit provides uncontradicted evidence that Mr. Dansie fully advised Mr. Weaks – and that Mr. Weaks understood – that to pursue his *pro se* motion he would have to testify and that, if he did so, he would have to admit to possession of the drugs and the gun. Mr. Weaks has offered no factual support – not even his own affidavit – to overcome this evidence and the presumption that counsel acted in accordance with professional norms. See Strickland v. Washington, 466 U.S. at 688. The Court therefore finds that Mr. Dansie's performance was not deficient regarding the motion to quash.

Even if Mr. Dansie had failed to advise the defendant of the potential consequences of filing the *pro se* motion to quash, the defendant has not shown that this deficiency prejudiced him. As noted, to show prejudice in a guilty plea case, a defendant must demonstrate that, but for counsel's alleged deficiencies, there was a reasonable probability that he would not have accepted the plea offer and would have proceeded to trial. See Hill v. Lockhart, 474 U.S. at 59; see also United States v. Hanson, 339 F.3d at 990 (defendant has the burden of showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"); United States v. Gibson, 577 F. Supp. 2d at 325 (defendant must offer affirmative proof of prejudice); United States v. Tolson, 372 F. Supp. 2d at 19 (failure to file a sworn affidavit is fatal to claim that defendant was

---

³ Although Mr. Dansie signed the "Certificate of Service" on all of the motions, including the Motion to Quash, he only signed as counsel the Supplement to Motion to Suppress, the Motion to Exclude, and the Motion to Dismiss Count Two of the Indictment on behalf of the defendant.

prejudiced by counsel's deficiencies and that, but for those deficiencies, she would have gone to trial instead of pleading guilty).

In this case, even without the incriminating statements that Mr. Weaks made at the April 10, 2002, evidentiary hearing, he knew the government had overwhelming evidence against him. Federal agents recovered approximately 56 grams of crack cocaine, a weapon, and over 50 rounds of ammunition on the ground below Ms. Conyers' residence. Furthermore, because Judge Bryant denied the defendant's motions to exclude the physical evidence and to suppress the incriminating statements made on the day of his arrest (acknowledging that the drugs and the gun were his), see 4/10/02 Tr. at 79, the physical evidence gathered at the time of Mr. Weaks' arrest and his post-arrest statements all would have been admissible at trial. In the face of such evidence, it is extremely unlikely that the defendant would have prevailed at trial. A reasonably competent attorney therefore would have advised the defendant to plead guilty, as Mr. Dansie did, and there is no reasonable probability that the defendant would not have followed that advice. See United States v. Hanson, 339 F.3d at 991.

*C. Defendant's Claim of Ineffective Assistance Regarding the Rule 41 Issue*

Mr. Weaks further argues that Mr. Dansie did not adequately litigate his motion to exclude evidence. § 2255 mot. at 19-20. In particular, Mr. Weaks contends that he was prejudiced by counsel's failure to argue that the FBI search warrant was deficient under Rule 41(f)(3)(B) – now Rule 41(f)(1)(C) – of the Federal Rules of Criminal Procedure. § 2255 Mot. at 20.[4] The defendant claims that if his lawyer had argued that law enforcement officers violated

---

[4] Rule 41(f)(1)(C) provides:

Rule 41 when they failed to leave a copy of the warrant at Ms. Conyers' residence, Judge Bryant would have suppressed the evidence in question and Mr. Weaks likely would have succeeded at trial. See § 2255 Mot. at 19-20. The Court finds the defendant's claim unconvincing.

The defendant has not offered any evidence that Mr. Dansie's decision to raise certain issues and not others at the April 10, 2002, hearing was anything other than a reasonable strategic or tactical choice. At the hearing, the defendant's counsel called witnesses, see 4/10/02 Tr. at 16-17, 40-41, challenged the statements of a witness favorable to the government, see id. at 76-77, and attempted to protect the defendant by objecting to the government's questions during its cross-examination of him. See id. at 31-32. All of these actions suggest that counsel acted competently and in accordance with a reasonable strategy. See Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective assistance of counsel must show that counsel's actions were not supported by a reasonable strategy."). The fact that in hindsight the defendant disagrees with this strategy does not render counsel's performance deficient.

Furthermore, Mr. Weaks has failed to explain how his counsel could have helped his case by raising the Rule 41 argument. Indeed, the only available evidence indicates that the agents did in fact leave a copy of the warrant at the apartment. See United States v. Weaks, 388 F.3d at 915. ("[T]he only evidence on point – the return on the warrant – stated that the officers left a copy of the warrant at the apartment."). The defendant's Section 2255 motion does not indicate what evidence he would have offered to the contrary. He notes only that an

---

> The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

14

unidentified witness might have testified that she overheard officers stating that they had come to the wrong house. See § 2255 Mot. at 18-19. By contrast, the defendant admitted under oath that the description of the residence on the warrant matched Ms. Conyers' residence, compare 4/10/02 Tr. at 19 with 4/10/02 Tr. at 22-23, and Agent Fulmer testified that the description in the warrant matched the building and the apartment they entered and that the agents entered the premises on a good faith belief that the search warrant was valid. See id. at 41-43, 46. Since it is extremely unlikely that the defendant could have prevailed on his Rule 41 argument, in these circumstances the Court concludes that there is no reasonable probability that he would have chosen to go to trial after this argument was rejected. Thus, even if the defendant's counsel failed to adequately litigate the Rule 41 issue, his deficiency did not prejudice the defendant. See United States v. Goodwin, 607 F. Supp. 2d 47, 50 (D.D.C. 2009) (defense attorney's failure to raise a particular legal issue did not prejudice defendant when defendant failed to show any reasonable probability that the failure would have had any effect on his case).

*D. Defendant's Claim of Ineffective Assistance Regarding Plea Advice*

Finally, Mr. Weaks argues that Mr. Dansie did not advise him of the consequences of his plea before encouraging him to plead guilty. § 2255 Mot. at 20-21. Specifically, Mr. Weaks contends that "counsel was . . . ineffective for advising the petitioner to plea [sic] guilty to issues that were not preserve [sic] for appeal." Id. at 20. The defendant's assertions here are likely referencing the court of appeals' decision in United States v. Weaks, where the court noted that Mr. Weaks had waived his ability to object to the introduction of

certain physical evidence "by failing to argue in the district court that a violation of Rule 41(f)(3) would support suppression of the evidence." United States v. Weaks, 388 F.3d at 915. The defendant contends that if Mr. Dansie had advised him that this particular issue was not preserved for appeal, he would not have pled guilty. § 2255 Mot. at 20. This "bare assertion," however, is unavailing. United States v. Tolson, 372 F. Supp. 2d at 21. In his affidavit, Mr. Dansie states that very shortly after he was retained, Mr. Weaks told him that he "was interested in negotiating a plea offer with the government" if the charges against Ms. Conyers could be dismissed, and that he was interested in a plea because "he knew the evidence against him was overwhelming." Opp., Att. 1, ¶ 2. Later, after Judge Bryant had denied the pretrial motions, Mr. Dansie avers, Mr. Weaks "informed me immediately that he wanted to negotiate a plea agreement. . . . I successfully negotiated such a plea agreement, I discussed the matter carefully with Mr. Weaks, and he agreed to enter a guilty plea." Opp., Att. 1, ¶ 6.

This Court need not hold an evidentiary hearing to determine precisely what advice Mr. Dansie gave Mr. Weaks because Mr. Dansie's affidavit is uncontradicted and because the defendant confirmed at his plea hearing that he was fully aware of the consequences of pleading guilty. See United States v. Carr, 373 F 3d at 1355; United States v. Weaver, 234 F.3d at 46; United States v. Gibson, 577 F. Supp. 2d at 328. In response to Judge Bryant's questions at the April 11, 2002, plea hearing, the defendant acknowledged understanding that (1) he had a right to a trial; (2) he had a right to confront the government's witnesses against him; (3) he had a right to testify or to remain silent, and that if he remained silent, his silence could not be used against him; (4) he had a right to appeal the judge's rulings on his pretrial motions; and (5) by pleading to a felony, he would give up certain rights. See 4/11/02 Tr. at 1-17. The defendant

further admitted that all of the facts in the government's factual proffer were accurate, id. at 16, acknowledged that no one had threatened him, forced him or pressured him into accepting the plea offer, id. at 11-12, and indicated that he had no questions about the plea agreement process. Id. at 16-17. At the time of sentencing, the defendant also personally acknowledged to the undersigned that he was aware of the consequences of his plea.

The issue is not whether defendant's counsel was deficient in the advice he provided but, rather, whether the defendant was prejudiced by such advice or lack of advice. In this instance, the defendant's colloquy with Judge Bryant while under oath at the plea hearing establishes that he was fully aware of the consequences of his plea. There simply is no reason to think that the defendant would have chosen to go to trial if his counsel had advised him differently. See United States v. Hanson, 339 F.3d at 992 (finding no reasonable probability that, but for counsel's errors, defendant would not have pleaded guilty and would have gone to trial).

## III. CONCLUSION

The defendant cannot prevail on his 28 U.S.C. § 2255 claim because he has failed to demonstrate either that his counsel's performance was deficient or that, even if there were deficiencies, they prejudiced his defense in any way. The Court finds it unnecessary to hold a hearing to address the defendant's claims because it is clear from the record that he is not entitled to relief. See United States v. Carr, 373 F.3d at 1354. For the reasons stated in this Opinion, it is hereby

ORDERED that the defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [120] is DENIED.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: January 3, 2012